## Dena Rymsha *vs.* Trust Insurance Company.

No. 98-P-1507.

Barnstable. March 10, 2000. - May 1, 2001.

Present: Armstrong, C.J., Perretta, & Beck, JJ.

*Insurance,* Homeowner's insurance, Cooperation by insured. *Evidence,* Relevancy and materiality. *Contract,* Insurance.

An insured's failure to produce financial records and documents pertinent to a claim for theft in accordance with the provisions of a homeowner's policy of insurance constituted a material breach of the policy, barring recovery under the policy for theft of various items of personal property [417-418]; in the circumstances, the insured was not entitled to a postjudgment opportunity to provide the requested information [418-419].

Civil action commenced in the Superior Court Department on June 20, 1997.

The case was heard by *Richard F. Connon,* J., on a motion for summary judgment.

*Robert P. Jachowicz* for the plaintiff.

*Glenda H. Ganem* (*Michael L. Snyder* with her) for the defendant.

Perretta, J. When Trust Insurance Company (Trust) denied the claim for theft presented by Dena Rymsha pursuant to her homeowner's policy of insurance, she sued for breach of contract and unfair insurance practices. See G. L. c. 93A and c. 176D. A Superior Court judge granted the insurer's motion for summary judgment, see Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974), on the stated basis that Rymsha was in material breach of her insurance contract by reason of her failure to provide Trust with pertinent financial information. On appeal, Rymsha argues that, because the information requested by Trust was irrelevant to her claim and because Trust failed to show that it was actually prejudiced by any refusal on her part to cooperate, summary judgment in favor of Trust was erroneously granted. We affirm the judgment.

1. *The undisputed facts.* In early February, 1996, Rymsha traveled to Florida for a four-day visit with her parents. On the day of her scheduled return flight to Massachusetts, February 12, she reported to the police that someone had broken into her rental car and had stolen various items of her property: expensive jewelry, electronic equipment, clothing, luggage, and golf clubs. None of the items reported as stolen was ever recovered.

At the time of the reported theft, Rymsha was insured under a homeowner's policy issued by Trust which limited its liability for loss of personal property to $40,000. Rymsha submitted a statement in proof of loss to Trust in which she estimated that the actual cash value of the stolen property was $32,007. After taking depreciation, policy limits, and a supplemental replacement cost claim into account, Rymsha declared a loss in the amount of $21,387. Trust received the statement on May 21, 1996, and about three weeks later, on June 7, 1996, notified her that it was investigating her claim, that it reserved its rights to deny coverage at a later date, and that her examination under oath had been scheduled for June 18. Trust also requested that she provide it with any receipts, photographs, appraisals, or any other documentation concerning the items, about thirty in number, which she claimed to have been stolen.

During the course of her examination under oath, Rymsha testified that she was the owner of three liquor stores and that she was the vice-president and secretary of three separate corporate entities. She reported an annual salary of $35,000, and stated that she was able to borrow money from her business. She was unaware of whether she had received any profit distributions or other income from these businesses. Rymsha also testified that she paid about $500 a month for rent and that she had a credit card indebtedness in the approximate amount of $20,000, with an interest rate of between fifteen and nineteen percent.

In the course of the examination under oath, Trust asked Rymsha to provide it with documents concerning the annual gross incomes of her businesses, her individual tax returns from 1988 to 1994, credit card information regarding the purchase of items she claimed to have been stolen, photographs of those

items, and any documents from her businesses that indicated a history of insurance claims. These requests were reiterated in a letter from Trust to Rymsha, dated July 17, 1996, in which it was also stated that a failure by her to provide the requested information would prejudice Trust's ability to complete its investigation of her claim. Over the following two months, Rymsha provided Trust with none of the requested information or documentation except for four receipts.[1]

By letter dated September 30, 1996, Trust notified Rymsha that her claim was denied due to her failure to provide Trust with material financial information in violation of the terms of the policy.[2] The letter of notification also offered Rymsha a final opportunity to present promptly the information it had requested from the outset. Rymsha responded with a demand letter under G. L. c. 93A in which she agreed to provide Trust with nine photographs of some of the items she claimed to have been stolen as well as letters from her parents and former husband in which they declared that they had given Rymsha, as gifts, many of the items comprehended by her claim under the policy. See note 1, *supra*. Rymsha's letter also contained a definite refusal to provide Trust with the remainder of its requests for further information on the basis that the information sought by Trust was irrelevant and immaterial as her claim was for items received by her as gifts. When Trust did not retreat from the position it had stated in its letters of September 30, 1996, Rym-

---

[1]Rymsha did provide Trust with three letters from her mother, father, and former husband, all dated March 22, 1996, all directed "[t]o whom it may concern," and all declaring that they were the donors of the many and various expensive items comprehended by Rymsha's claim under the policy. However, none of the letters bore any indicia of reliability, such as the signatory's address or a jurat. Although the judge acknowledged the existence of the three letters in his memorandum of decision on the motion for summary judgment, he declined to treat the letters as affidavits meeting the standards set out in Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985).

[2]The terms of the policy relied upon by Trust provide that after a loss by an insured, Trust "may reasonably require you to . . . provide us with records and documents pertinent to the loss," and that the policy would be void if, before or after a loss, an insured "intentionally concealed or misrepresented any material fact or circumstance" relating to the insurance provided by the policy.

sha, on June 20, 1997, brought a claim against Trust, alleging breach of contract and violations of G. L. c. 93A and c. 176D.

Because Rymsha and Trust agreed that it was "appropriate for [the Superior Court judge] to determine whether the requested documents [were] pertinent to the loss claimed by Rymsha" and because it was well within the judge's discretion to refuse to consider the three letters presented in opposition to Trust's motion for summary judgment, see note 1, *supra*, the only question before the judge was one of law, that is, whether Trust was in breach of its contract of insurance when it denied Rymsha's claim on account of her failure to provide it with "pertinent" records and documents in accordance with the policy provisions set out in note 2, *supra*.

The judge concluded that Rymsha's financial status was relevant, that the information requested by Trust was pertinent to her financial status, and that her failure to produce that information was a material breach of the policy issued by Trust.

2. *Discussion.* We think resolution of Rymsha's appeal is controlled in all respects by *Mello* v. *Hingham Mut. Fire Ins. Co.*, 421 Mass. 333, 337 (1995). In that case, the court agreed with those authorities therein cited which hold that the "submission to an examination, if the request is reasonable, is strictly construed as a condition precedent to the insurer's liability." *Id.* We see no basis for a distinction between an obligation to submit to a reasonably requested examination under oath and the duty to produce documents pertinent to the claimed loss. Rymsha does not contend otherwise. Indeed, she does not even cite to, let alone discuss, *Mello.* Rather, she argues only that, because she informed Trust from the outset that many of the items she reported as stolen had been given to her, the information sought by Trust (specifically, her personal and corporate income tax returns for the years 1988 through 1994) was not pertinent to her claim.

In considering whether the documents requested by Trust were pertinent to Rymsha's claim, the Superior Court judge concluded that Rymsha's examination under oath and the undisputed circumstances of her claim gave rise to the reasonable suspicion that she did not have the resources to purchase the allegedly stolen items, that she had a "motive to stage the

loss," that Trust had the right "to assure itself of the validity of [the] claim," and that the requested documents were relevant to that question. We see no error. See *Sidney Binder, Inc.* v. *Jewelers Mut. Ins. Co.*, 28 Mass. App. Ct. 459, 462-463 (1990) (in theft claim, evidence of insured's business affairs and personal finances relevant to show that insured had motive to stage burglary). Numerous other jurisdictions have held that the financial status of an insured can be relevant to an insurer's investigation of a claim. See, e.g., *Stover* v. *Aetna Cas. & Sur. Co.*, 658 F. Supp. 156, 160 (S.D.W. Va. 1987); *Pisa* v. *Underwriters at Lloyd's, London*, 787 F. Supp. 283, 285 (D.R.I.), aff'd, 966 F.2d 1440 (1st Cir. 1992); *DiFrancisco* v. *Chubb Ins. Co.*, 283 N.J. Super. 601, 612 (App. Div. 1995); *Dlugosz* v. *Exchange Mut. Ins. Co.*, 176 A.D.2d 1011, 1013 (N.Y. 1991); *Pilgrim* v. *State Farm Fire & Cas. Ins. Co.*, 89 Wash. App. 712, 720-721 (1997). In the circumstances here presented, the Superior Court judge was not in error in concluding that the challenged documents were pertinent to Rymsha's claim.

Relying upon *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 490 (1990), Rymsha next argues that Trust failed to make any showing that it was prejudiced by her refusal to furnish documents pertinent to the investigation of her claim. Assuming for purposes of decision that Trust was required to make an affirmative showing that actual prejudice resulted from Rymsha's refusal to provide the requested documents, but see *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 122-123 (1991), our review of the record leads us to conclude that such a showing was made. Rymsha's refusal to furnish the reasonably requested pertinent information put Trust in the untenable position of either paying the claim without question and without any means by which to investigate its validity, notwithstanding the circumstances and amount of the loss described in her unsworn statement and examination under oath testimony, or being sued for breach of contract and unfair acts and practices. We think the prejudice to Trust too obvious to warrant discussion. It is enough to state that Rymsha's blanket refusal to provide the reasonably requested documents even stymied Trust's ability to show actual prejudice.

3. *Postjudgment right to comply.* Rymsha's final argument is

that should we conclude, as we do, that Trust's requests were reasonable, she now should be given the opportunity to provide the requested information. She argues that, because the policy provided no procedure by which to resolve the dispute concerning the pertinence of the information requested by Trust, she was without the means to protest the request without risking forfeiture of the benefits of the policy.

In the circumstances of this case, we do not see why Rymsha should be entitled to a judicial test-run on the issue of the reasonableness of Trust's requests for information where the law provides her with more than adequate remedies for any unreasonable, unfair, or illegal act by Trust.[3] See G. L. c. 93A and c. 176D.

*Judgment affirmed.*

---

[3]Assuming that Rymsha had the right to seek a declaratory judgment on the issue of the reasonableness of Trust's requests before bringing an action to recover on the policy, see *DiFrancisco* v. *Chubb Ins. Co.*, 283 N.J. Super. at 613-615; *2423 Mermaid Realty Corp.* v. *New York Property Ins. Underwriting Assn.*, 142 A.D.2d 124 (N.Y. 1988), we note that she did not do so.